UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BORUTA,

    Plaintiff,

v.	    Case No. 1:15-CV-274
    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born in 1976. PageID.242. He completed the 12th grade and had previous employment as cook, dishwasher and cashier. PageID.259. Plaintiff alleged a disability onset date of January 7, 2013. PageID.242. Plaintiff identified his disabling conditions as bipolar disorder, depression, anxiety, obsessive compulsive disorder (OCD), and schizophrenia. PageID.258. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 18, 2014. PageID.32-42. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] The Court notes that plaintiff was identified as "Michael Daniel Boruta II" during the administrative proceedings. PageID.32.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 7, 2013, and that he met the insured status requirements of the Act through September 30, 2014. PageID.34. At the second step, the ALJ found that plaintiff had severe impairments of an affective disorder and anxiety. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to unskilled work with simple instructions and simple, routine tasks and he is limited to no more than occasional contact with coworkers, supervisors, and the public.

PageID.36. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.40.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy. PageID.41-42. Specifically, plaintiff could perform the following light, unskilled jobs in Michigan and nationally: floor cleaner (2,200 jobs in Michigan and 35,000 jobs in the nation); warehouse laborer (2,800 jobs in Michigan and 42,000 jobs in the nation); and machine cleaner (3,000 jobs in Michigan and 38,000 jobs in the nation). PageID.41. Accordingly, the ALJ determined that plaintiff has not been under a disability,

as defined in the Social Security Act, from January 7, 2013 (the alleged onset date) through July 18, 2014 (the date of the decision).  PageID.42.

### III. ANALYSIS

Plaintiff has raised four issues on appeal.

### A. The ALJ erred by failing to make findings regarding the severity of various alleged impairments.

Plaintiff contends that the ALJ erred at step two of the sequential evaluation by failing to identify his asthma, migraine headaches, depression, OCD, bipolar disorder, auditory hallucinations, and adult antisocial behavior as severe impairments.  A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the evaluation.  *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).  Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error.  *Maziarz*, 837 F.2d at 244.  An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity (RFC).  *Id.*  "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant."  *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff had severe impairments of affective disorder and anxiety. PageID.34.  The ALJ's failure to include other severe impairments at step two is legally irrelevant. *Anthony*, 266 Fed. Appx. at 457.  Accordingly, plaintiff's claim of error is denied.

> **B.   The ALJ erred by failing to address plaintiff's diagnoses of depression, obsessive compulsive disorder, bipolar disorder, auditory hallucinations, and adult antisocial behavior, resulting in a decision not supported by substantial evidence.**

The medical record indicates that plaintiff was voluntarily admitted to a hospital's inpatient program on November 12, 2013 "due to depression, anxiety, and psychotic symptoms; auditory hallucinations." PageID.620-621. He stayed for six days. *Id.* An admission evaluation included a differential diagnosis of bipolar disorder. PageID.631. Another evaluation from November 11, 2013, included diagnostic impressions of bipolar II disorder and OCD. PageID.693. At that time plaintiff reported compulsively cleaning his hands up to 40 times a day, brushing his teeth 8 times a day, and filling up 5 to 6 notebooks a week with random information. *Id.* In addition, plaintiff "reported some symptoms that may be auditory hallucinations." *Id.*

On November 9, 2013, a few days prior to the hospitalization, plaintiff underwent a consultative psychological examination with James Lozer, Ed.D. PageID.38, 612-618. At that time, plaintiff reported that he often felt depressed and suicidal, denied hallucinations or delusions, but reported that he "heard things occasionally." PageID.38, 615. The ALJ noted that "Dr. Lozer's diagnosis was personality disorder, not otherwise specified, with narcissistic, antisocial, and compulsive features [;] alcohol use disorder [;] gambling disorder, persistent [;] persistent depressive disorder, early onset [;] and insomnia disorder." PageID.38.

The ALJ addressed plaintiff's November 2013 hospitalization and subsequent activities, providing in pertinent part:

> The claimant was hospitalized for depression and anxiety with suicidal ideation and auditory hallucinations from November 12, to November 18, 2013 (Exhibit 8F). At admission, the claimant's symptoms included insomnia, racing

6

> thoughts, mood swings, irritability, and auditory hallucinations. He was treated with individual therapy, group therapy, and medication management. Upon release, the claimant reported the medication and treatment helped to alleviate his symptoms.
>
> The claimant resumed outpatient treatment in December 2013 (Exhibit 14 F). He reported his symptoms included daily depression, anxiety, and daily headaches. The claimant stated he spent his money impulsively and had trouble managing mood swings. The therapist noted the claimant was highly irritable, depressed, and anxious with thoughts of suicide. His symptoms included anxiety, depressed mood, emotional ability, impulsivity, irritability, pain, and racing thoughts.
>
> The claimant reported he was feeling better in January 2014. In February 2014, he reported he was working at a pizza restaurant. He indicated his depression was better. Although he had missed a medication review appointment, he reported he was taking his medication as prescribed. The claimant was discharged from treatment in June 2014 because he had not attended any sessions since February 19, 2014.

PageID.38-39.

Contrary to plaintiff's contention, the record reflects that the ALJ addressed the various diagnoses referenced at plaintiff's hospitalization and his treatment record. PageID.37-40. The ALJ found that despite plaintiff's mental impairments, he was able to perform a number of activities:

> The evidence also shows that even without consistent ongoing treatment, the claimant is able to care for his personal needs independently. He can cook and perform household chores. He drives and uses public transportation when necessary. He can manage his own finances. He uses a computer to play games and access Facebook and Craig's List.

PageID.40. Finally, the ALJ's RFC determination recognized that plaintiff's mental impairments restricted his ability to work, with the ALJ limiting him to unskilled work with simple instructions; simple, routine tasks; and no more than occasional contact with coworkers, supervisors, and the public. PageID.36. For these reasons, plaintiff's claim of error is denied.

### C. The ALJ erred by denying plaintiff benefits because he was too poor to obtain medical treatment that may help him.

SSR 96-7p[2] prohibits an ALJ from drawing inferences about a claimant's failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure, such as "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." Plaintiff contends that the ALJ erred by finding that his symptoms were not fully substantiated due to his non-compliance with treatment without considering his lack of financial ability to pay for treatment. At the hearing, plaintiff testified that he stopped taking medication in April 2014 because he did not have money or a prescription, and he missed a doctor's appointment to obtain a prescription. PageID.77. Plaintiff contends that "in his decision, the ALJ notes negatively that Plaintiff had not complied with treatment." PageID.740. Plaintiff's claim of error appears based upon the ALJ's finding that plaintiff was feeling better and working in February 2014; that although he had missed a medication review appointment, he was taking his medication as prescribed; and that he had not attended therapy since February 19, 2014. PageID.39, 740. The Court does not view the ALJ's statement as drawing an adverse credibility inference under SSR 96-7p. Accordingly, plaintiff's claim of error is denied.

---

[2] Social Security Rulings (SSR's) "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006).

      **D.**      **The ALJ erred by using boilerplate language which failed to inform in a meaningful reviewable way of the specific evidence the ALJ considered in determining that plaintiff's complaints were not entirely credible.**

Plaintiff contends that the ALJ used meaningless boilerplate with respect to evaluating his credibility. Where a claimant contends that the ALJ made only a "boilerplate" credibility finding, this contention has no merit where the ALJ provided a thorough explanation elsewhere in the decision setting forth his reasons for doubting the claimant's account. *See Cox v. Commissioner of Social Security*, 615 Fed. Appx. 254, 260 (6th Cir. 2015). Here, the ALJ gave specific reasons for rejecting plaintiff's credibility. PageID.39-40. In this regard, plaintiff's assertion that the ALJ incorrectly recited his medical history of depression is without merit. The ALJ stated that "although claimant has reported he suffered from depression with suicidal ideation since he was a young child, there is no evidence indicating that he had been hospitalized for depression prior to November 2013." PageID.39. In support of his claim, plaintiff refers to his hearing testimony that he was hospitalized in 2005, PageID.82, 744, and a medical history note from April 23, 2013, which stated that "[in] 2005 he was at Pine Rest IP for 1 week for si." PageID.652, 744. The latter record indicates a past hospitalization for suicidal ideation, not depression. Accordingly, this claim of error is denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated:  March 24, 2016             /s/ Ray Kent
                                   RAY KENT
                                   United States Magistrate Judge